**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                          *Counsel for Plaintiff*
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **T.M., a minor, by and through Her mother and natural guardian J.T., 60 Mini Street Grassflat, PA 16839** <br> **Plaintiffs,** <br><br> **v.** <br><br> **COYLE MANAGEMENT, INC. d/b/a MCDONALD'S 14659 Clearfield Shawville Hwy Clearfield, PA 16839 And COYLE PROPERTIES LIMITED II, LLC d/b/a MCDONALD'S 14659 Clearfield Shawville Hwy Clearfield, PA 16839 And MCDONALD'S CORPORATION 110 N Carpenter St. Chicago, IL 60607 And MCDONALD'S USA, LLC 110 N. Carpenter St. Chicago, IL 60607** <br> **Defendants.** | **Civil Action No. 323-cv-313** <br><br> **Complaint and Jury Demand** |

## CIVIL ACTION

Comes now, Plaintiffs, T.M., a minor, by and through her mother and natural guardian, J.T., (hereinafter "Plaintiffs"), by and through their attorney, Koller Law, LLC, bring this civil matter against Defendants Coyle Management, Inc. d/b/a McDonald's and Coyle Properties Limited II, LLC d/b/a McDonald's (hereinafter "Defendant Coyle"), Defendant McDonald's Corporation (hereinafter "Defendant McDonald's Corporation"), and Defendant McDonald's USA, LLC (hereinafter "Defendant McDonald's USA") (collectively "Defendants"), for violations pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

## <u>INTRODUCTORY STATEMENT</u>

1.   This case contains allegations of extremely disturbing and disgusting unlawful sexual misconduct and violations of federal and state law. At all times relevant to the Complaint hereto, T.M. was sixteen (16) years old and working as an employee at the McDonald's location at 14659 Clearfield Shawville Highway (hereinafter the "Restaurant"). T.M. intended to work at the Restaurant full-time for the summer and then part-time during the school year as she was about to enter 11th grade that fall. T.M.'s first shift was on June 6, 2023 and she did not return to work after a co-worker exposed T.M. to unwelcome sexual conduct.

2.   Taylor English ("Mr. English"), an employee at the Restaurant, was twenty-eight (28) years old at all times relevant to this Complaint. Mr. English had previously had an incident involving sexual intercourse with another minor employee at the Restaurant, which, upon information and belief, Defendant Coyle knew about. Instead of terminating Mr. English after that prior incident, Defendant Coyle switched Mr. English to a different shift, whereby he crossed paths with T.M.

3.   Mr. English took advantage of T.M.'s shifts overlapping with his, groomed T.M., sexually harassed T.M. in the workplace, and coerced her into engaging in sexual intercourse with him. T.M. reported this incident of illegal conduct to multiple managers at Defendant Coyle who effectively told T.M. there was nothing that they could do to help her, that they had warned T.M. about Mr. English, and that T.M. "should not have gotten involved with a married man" or words to that effect.

4.   Plaintiffs allege that Defendant Coyle, by and through its managers, supervisors, agents and employees, engaged in a pattern and practice of unlawful sexual harassment in violation of Title VII and the PHRA.

5.   Plaintiffs allege that Defendant Coyle, by hiring and retaining Mr. English following his prior incident of illegal conduct, was negligent in its hiring, retention, and supervision of him.

6.   Plaintiffs allege that Defendant McDonald's Corporation and Defendant McDonald's USA were responsible for all training materials, standards, and the setting of conduct and anti-harassment/anti-discrimination policies at McDonald's locations, including the Restaurant.

7.   Despite being on notice of pervasive problems of sexual harassment, Defendant McDonald's Corporation and Defendant McDonald's USA fail to properly train its staff and managers and do nothing to ensure what little training is provided is effective or actually takes place to prevent harassment.

8.   Upon information and belief, Defendant McDonald's Corporation and Defendant McDonald's USA provide inadequate training packages to franchisees such as Defendant Coyle and fails to hold those who commit harassment accountable.

9.   Upon information and belief, Defendant Coyle, Defendant McDonald's Corporation and Defendant McDonald's USA do not have sufficient pre-hire safeguards in place to ensure

individuals who will be in close proximity to minors do not have felony criminal backgrounds which would render them unsuitable to work with minors.

10. These circumstances, which Defendant McDonald's Corporation and Defendant McDonald's USA allow to persist, caused injuries and damages to Plaintiff described herein. worked at the Restaurant for approximately

## **THE PARTIES**

11. Plaintiffs incorporate the preceding paragraphs as if set forth more fully at length herein.

12. T.M. is a female individual under the age of eighteen who resides in the Western District of Pennsylvania; J.T., T.M.'s mother and natural guardian, is an adult individual residing at the above-captioned address.

13. At all times relevant to the Complaint, T.M., who was born in 2006, was under the age of eighteen (18).

14. Upon information and belief, Defendants Coyle Management, Inc. d/b/a McDonald's and Coyle Properties Limited II, LLC d/b/a McDonald's (Collectively Defendant Coyle) is a franchise that operates McDonald's restaurants with a location at 14659 Clearfield Shawville Hwy, Clearfield, PA 16839.

15. Upon information and belief, Defendant McDonald's Corporation is a multinational fast-food chain, incorporated in Delaware, with a corporate headquarters at 110 N. Carpenter St., Chicago, IL 60607.

16. Upon information and Belief, Defendant McDonald's USA, LLC is a Delaware corporation that has its principal place of business in Illinois and operates restaurants in all 50 states.

17. Upon information and belief, Defendant McDonald's Corporation and Defendant McDonald's USA (collectively McDonald's Corporate Defendants) share a registered address of

251 Little Falls Drive, Wilmington, DE 19808

18. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

19. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

20. McDonald's Corporate Defendants contract with numerous franchisees that jointly operate McDonald's Restaurants throughout Pennsylvania, including Defendant Coyle.

21. Together, all Defendants jointly operated the Restaurant in question during the relevant period and jointly employed all employees including Plaintiff, Mr. English, and the managerial staff.

22. Defendant Coyle acts as an agent of McDonald's Corporate Defendants and/or McDonald's Corporate Defendants hold out Defendant Coyle as their agent.

23. Upon information and belief, McDonald's Corporate Defendants exercise strict control over the working conditions of employees at McDonald's franchised restaurants, including at restaurants operated by Defendant Coyle (including the Restaurant), with respect to matters such as Human Resources policies, the physical work environment, required worker and manager training, and discipline and termination of employees.

24. Upon information and belief, McDonald's Corporate Defendants also provide guidance to franchisees, including Defendant Coyle, on training about and prevention of sexual harassment

and reporting and investigating sexual harassment complaints, but said guidance is entirely inadequate and ineffective.

25. For the reasons set forth herein, T.M. reasonably believed she worked for McDonald's Corporate Defendants while she was working at Defendant Coyle.

26. T.M.'s reasonable belief is grounded upon the fact that Plaintiff applied through McDonald's Corporate, wore a McDonald's uniform, served McDonald's products, and followed McDonald's policies and practices.

27. T.M. reasonably believed that she was working for a large corporate employer that would provide a safe, well-controlled, well-monitored working environment where she would not be subject to a hostile work environment based on sex, sexual harassment, and assault.

28. All Defendants employ more than 15 employees and are considered employers under both Title VII and the PHRA.

29. T.M. is considered an employee of all Defendants under both Title VII and the PHRA.

30. Defendant Coyle owned and operated the Restaurant where T.M. and English worked.

31. McDonald's Corporate Defendants were responsible for all training materials, standards, and the setting of conduct and anti-harassment/anti-discrimination policies at McDonald's locations, including the Restaurant.

32. McDonald's Corporate Defendants are liable for the acts and/or omissions of Defendant Coyle because it was the apparent agent of McDonald's Corporate Defendants.

33. Upon information and belief, McDonald's Corporate Defendants operate, franchise, and service a restaurant system that prepares, assembles, packages, and sells a limited menu of McDonald's Foods under the McDonald's system.

34. Upon information and belief, the McDonald's System is designed to promote uniformity

of operations.

35. Upon information and belief, the McDonald's Corporate Defendants have franchise agreements with franchisees, to include Defendant Coyle, which require Defendant Coyle to follow the McDonald's System by complying with all standards, business policies, practices and procedures set forth by McDonald's Corporate Defendants.

36. Upon information and belief, pursuant to those agreements, Defendant Coyle was required to follow the policies provided by the McDonald's Corporate Defendants relating to operations, inventory, accounting, management, and advertising and to submit to regular comprehensive site inspections and computer monitoring.

37. Upon information and belief, the franchise agreements between McDonald's Corporate Defendants and Defendant Coyle gives significant control to McDonald's Corporate Defendants over restaurant operations, the physical work environment, working conditions, personnel training, discipline and discharging of employees, marketing and brand use, equipment, and the finances of franchisees' restaurants, and give McDonald's Corporate Defendants unlimited authority to inspect restaurants to monitor workplace conditions, including labor conditions, and to ensure compliance with the standards and policies of McDonald's Corporate Defendants.

38. Upon information and belief, McDonald's Corporate Defendants maintain national franchise standards to which their franchisees must adhere, and that affect almost every aspect of the restaurants' function, including practices and policies relating to crew members' labor conditions.

39. Upon information and belief, Defendant Coyle is subject to these national franchise standards, which set work rules and assignments as well as conditions of employment including compensation, benefits, and hours.

40. Upon information and belief, McDonald's Corporate Defendants supervise day-to-day operations and inspect and evaluate all franchisees, including Defendant Coyle, to ensure compliance with their franchise standards governing recruitment, development, training, and retention of qualified personnel.

41. Upon information and belief, through the inspections, McDonald's Corporate Defendants will identify specific employees who should be disciplined.

42. Upon information and belief, McDonald's Corporate Defendants exercise control over hiring, including by maintaining a nationwide website to which all applicants must apply to work at any McDonalds.

43. Upon information and belief, McDonald's Corporate Defendants also dictate staffing levels, which in turn affects hiring and firing decisions.

44. Upon information and belief, during the relevant time period, McDonald's Corporate Defendants did not ensure adequate or effective training of McDonald's employees, to include employees at Defendant Coyle, to prevent sexual harassment.

## JURISDICTION AND VENUE

45. Plaintiffs incorporate the preceding paragraphs as if set forth more fully at length herein.

46. The Court may properly maintain personal jurisdiction over Defendants because the Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

47. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks

redress for violations of federal law.

48. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

49. Venue is properly laid in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiffs are domiciled in this judicial district, the Defendants operate places of business located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

50. Plaintiffs incorporate the preceding paragraphs as if set forth more fully at length herein.

51. Plaintiffs exhausted Plaintiffs' administrative remedies under Title VII and PHRA.

52. Plaintiffs timely filed a Charge of Discrimination ("Charge") against Defendants on July 10, 2023, with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation.

53. The Charge was assigned Charge Numbers 530-2023-06956 and 530-2023-06957 and were dual filed with the Pennsylvania Human Relations Commission ("PHRC").

54. The EEOC issued Plaintiffs a Dismissal and Notice of Rights ("Right to Sue") relative to Charge Number 530-2023-06956 and that Notice is dated on September 22, 2023; it was issued on Request and. Plaintiffs received the notice by electronic mail.

55. The EEOC issued Plaintiffs a Dismissal and Notice of Rights ("Right to Sue") relative to Charge Number 530-2023-06957 and that Notice is dated on September 22, 2023; it was issued on Request and. Plaintiffs received the notice by electronic mail.

56. Prior to the filing of this action, Plaintiffs notified the EEOC of Plaintiffs' intent to proceed with a lawsuit in federal court.

57. Plaintiffs file the instant Complaint within ninety (90) days of the receipt of Plaintiffs' Notices of Right to Sue in this matter.

58. Plaintiffs have exhausted Plaintiffs' administrative remedies as to the allegations of this Complaint.

## **MATERIAL FACTS**

59. Plaintiffs incorporate the preceding paragraphs as if set forth more fully at length herein.

60. T.M. was born in 2006 and was, at all times relevant hereto, a sixteen-year-old female who entered eleventh (11th) grade in the fall of 2023.

61. Taylor English (hereinafter "Mr. English"), was, at all times relevant hereto, an employee of the McDonald's fast-food restaurant located at 14659 Clearfield Shawville Highway (hereinafter the "Restaurant") employed as a cook and, at all times relevant hereto, was twenty-eight years (28) old.

62. Nikkie Leach (hereinafter "Ms. Leach"), at all times relevant hereto, was also an employee at the Restaurant and was Mr. English's fiancée.

63. Upon information and belief, Mr. English had a criminal background and a prior incident involving sexual intercourse with another minor employee at the Restaurant.

64. Upon information and belief, Defendants do not have a uniform practice for conducting background checks.

65. Carrie Bennett (hereinafter "Ms. Bennett") served as the General Manager of the Restaurant and was a management-level employee of Defendant Coyle.

66. Ms. Bennett was very friendly with Ms. Leach.

67. Prior to hiring T.M., Ms. Bennett hired Mr. English to work at the Restaurant.

68. Defendants hired T.M. in the position of Crew Member on or about June 6, 2023.

69. At all times relevant to the Complaint, T.M. was qualified for the position and performed well.

70. T.M. intended to work at the Restaurant full-time for the summer and then part-time during the school year.

71. T.M.'s starting pay rate was ten dollars ($10.00) per hour.

72. T.M.'s first shift at the Restaurant was on June 6, 2023, starting at 2:00 PM.

73. T.M. worked the following days and shifts at the Restaurant:

      a.  June 7, 2023 from 9:00 AM to 12:00 PM;

      b.  June 8, 2023 from 1:00 PM to 4:00 PM;

      c.  June 9, 2023 from 9:00 AM to 4:00 PM;

      d.  June 10, 2023 from 11:00 AM to 6:00 PM;

      e.  June 11, 2023 from 11:00 AM to 6:00 PM; and

      f.  June 12, 2023 from 10:00 AM to 3:00 PM.

74. For each of the above-described shifts, J.T.. T.M.'s mother, drove T.M. to work and picked her up from work at the end of her shift as T.M. had just obtained her driver's license on May 26, 2023.

75. T.M. did not work at the Restaurant on June 13 and 14, 2023.

76. On or about June 15, 2023, T.M. worked at the Restaurant from 1:00 PM to 8:00 PM.

77. This June 15, 2023 shift was the first shift T.M. drove herself to work.

78. On or about June 16, 2023, T.M. worked at the Restaurant from 9:00 AM to 5:00 PM and also drove herself to this shift.

79. T.M. did not work a shift at the Restaurant on June 17, 2023.

80. During T.M.'s first week of work, she met Mr. English at work.

81. Mr. English began to engage in grooming behavior with T.M. by engaging in what began as casual conversation about taboo topics for younger individuals and also engaged in what began as subtle intimidation and flexing of a power dynamic.

82. By way of example and not limitation, Mr. English told T.M. that he was a tattoo artist and asked T.M., a minor, if she wanted a tattoo.

83. By way of further example and not limitation, Mr. English also casually talked about his felony background with T.M. and that he "robbed a bank" or words to that effect.

84. T.M. found these conversations odd and not work appropriate, but it was not until later that she realized the manipulative, exploitative, and intimidation effect of these grooming conversations with Mr. English.

85. Also, during T.M.'s first week of work, J.T. had breakfast with T.M. at the Restaurant.

86. That same day J.T. came to have breakfast with T.M., Ashly Bowman (hereinafter Ms. Bowman), Shift Manager at Defendant Coyle and, therefore, a member of managerial staff, who was also working that day, approached J.T..

87. Ms. Bowman told J.T. that Mr. English was "trouble" or words to that effect.

88. Ms. Bowman's sister Jessica (hereinafter "Jessica") and J.T. were friendly.

89. Mr. English had previously engaged in a sexual relationship with a younger female employee of the Restaurant who, upon information and belief, was under the age of eighteen (18) at the time of the relationship.

90. Upon information and belief, Defendant Coyle was aware of this unwelcome sexual conduct.

91. Despite its knowledge, Defendant Coyle did not terminate Mr. English's employment.

92. Instead, Mr. English retained his employment with the Restaurant and the only thing that Defendant Coyle did after learning about this incident was to switch Mr. English to third shift.

93. Based on its knowledge of Mr. English's prior sexual relationship with a minor female, Defendant Coyle knew or should have known that Mr. English had a tendency to engage in illegal sexual behavior towards minor females.

94. Plaintiffs are aware of this information as Jessica revealed to J.T. that Ms. Bowman was aware of Mr. English's prior sexual relationship with a younger female employee of the Restaurant and all that Defendant Coyle did was to switch Mr. English's shift so that he was not working with the younger female.

95. On or about June 18, 2023, Defendant Coyle scheduled T.M. for the 3:00 PM to 10:00 PM shift.

96. Defendant Coyle also scheduled Mr. English to work a shift which overlapped T.M.'s shift.

97. T.M. drove herself to work on or about June 18, 2023.

98. Mr. English immediately zeroed in on T.M. during the shift, initiating a lot of casual conversation.

99. Mr. English's grooming methods were to try and build a friendship, build trust, and to build an emotional connection with Plaintiff.

100.    At the end of T.M.'s shift, at or around 10:00 PM, Mr. English told T.M. that he would walk her to her car and did do so.

101.    The two walked to the car wherein Mr. English entered T.M.'s car to continue the conversation.

102.    Upon information and belief, T.M.'s car was on property which was within the exclusive or concurrent control of Defendant Coyle.

103.    While he was in the car in the vicinity of the Restaurant, Mr. English kissed T.M., a girl whom he knew or should have known was under the age of eighteen.

104.    While he was in the car in the vicinity of the Restaurant, Mr. English touched T.M's genitals when he knew or should have known T.M. was under the age of eighteen.

105.    While he was in the car in the vicinity of the Restaurant, Mr. English exposed his genitals to T.M. when he knew or should have known she was under the age of eighteen.

106.    While he was in the car in the vicinity of the Restaurant, Mr. English told T.M. something to the effect of "this is what you're going to be working with" when he showed her his penis.

107.    After this encounter, Mr. English left T.M.'s vehicle and T.M. drove home.

108.    T.M., after being exposed to this severe sexual harassment by way of language and physical touching, intimidated by Mr. English, and in fear of retaliation and victim blaming, did not tell anyone what happened.

109.    T.M. worked at the Restaurant again on or about June 19, 2023 from 8:00 AM to 3:00 PM.

110.    Mr. English did not work at the Restaurant on or about June 19, 2023.

111.    Instead, on or about June 19, 2023, Mr. English met T.M. after work at a convenience store.

112.    Mr. English leveraged his working relationship with T.M. to schedule and coordinate meeting T.M. at a convenience store on or about June 19, 2023.

113.    Mr. English drove T.M.'s car to a nearby wooded area and had sex with T.M., a female co-worker he knew or should have known was under the age of eighteen.

114.    T.M. worked at the Restaurant on or about June 20, 2023 from 10:00 AM to 3:00 PM; she did not work at the Restaurant on June 21 or 22, 2023.

115.    On or about June 21, 2023, Mr. English requested money via CashApp from T.M..

116.    T.M. worked at the Restaurant on June 23, 2023 from 8:00 AM to 4:00 PM and on June 24, 2023.

117.    After work on both June 23 and 24, 2023, Mr. English met T.M. and assaulted her by engaging in unwelcome sexual conduct.

118.    During this unwelcome sexual conduct, Mr. English told T.M. that she would be all right, or words to that effect, while T.M. was screaming, crying, and rejecting Mr. English's sexual advances.

119.    Mr. English intimidated T.M. against reporting his conduct to Defendants.

120.    By way of example and not limitation, Mr. English told T.M. that he was in a gang and threatened T.M. with death threats against her family.

121.    Despite the intimidation tactics of Mr. English, and not entirely sure what to do, T.M. reported the above incidents to Ms. Bowman on the night of June 24, 2023.

122.    Despite T.M.'s good-faith report of sexual harassment and a hostile work environment, Ms. Bowman's callous response was to tell T.M. that Ms. Bowman warned T.M. about Mr. English, or words to that effect.

123.    Ms. Bowman also told T.M. that there was nothing that Ms. Bowman could do to help T.M., or words to that effect.

124.    Ms. Bowman's response demonstrated a gross failure by Defendants to effectively address and remediate sexual harassment and a failure of training by Defendants to identify the signs of sexual harassment in order to prevent future sexual harassment.

125.    Upon information and belief, Ms. Bowman previously received reports from another employee about Mr. English and his sexual harassment and failed to take any action to prevent Mr. English from sexually harassing other employees in the future.

126.    Upon information and belief, Defendants failed to train Ms. Bowman and other management staff on how to appropriately handle complaints of sexual harassment or unwelcome sexual conduct.

127.    After the gross failure by Defendants to address T.M.'s complaint of sexual harassment and unwelcome sexual conduct by Mr. English, an employee of Defendants, T.M. reported the unwelcome sexual conduct and death threats to her grandmother.

128.    T.M. also reported Mr. English's conduct to the local police.

129.    Following her reports to the police, on or about June 25, 2023, T.M. reported Mr. English's unwelcome sexual conduct to Ms. Bennett and to Regina (Night Shift Manager at Defendant Coyle).

130.    Ms. Bennett callously responded to T.M. stating that T.M. should not have gotten involved with a married man, or words to that effect.

131.    Ms. Bennett's response demonstrated a gross failure by Defendants to effectively address and remediate sexual harassment and a failure of training by Defendants to identify the signs of sexual harassment in order to prevent future sexual harassment.

132.    Defendants failed to train its management staff on the appropriate steps to take upon receipt of reports of unwelcome sexual acts by another employee.

133.    Defendants failed to ensure that its management staff enforced any existing anti-harassment policy, effectively making any alleged policies nonexistent or mere lip service against sexual harassment.

134.    The next day, on or about June 26, 2023, J.T. called Ms. Bowman and Deborah Schmidt, Corporate McDonald's Defendants Human Resources Representative, to inform them that T.M. would not continue to work for Defendants.

135.    T.M. was subjected to a work environment which was so hostile that it effectively became a term or condition of her continued employment.

136.    T.M. did not receive adequate training from Defendants on how to recognize or report harassment in the workplace.

137.    Mr. English was not trained nor did he receive adequate remedial action whereby Defendants would have made it clear that sexual harassment was not tolerated in the work place to the point whereby Mr. English either did not know his conduct violated any of Defendants polices and/or he believed he would not get punished if caught.

138.    Because of his employment with Defendants, Mr. English was aware of T.M.'s work schedule and could plan his harassment of T.M. around her work schedule.

139.    Mr. English engaged in unwelcome sexual conduct towards T.M. while still on the clock working shifts for Defendants.

140.    T.M. was left with no option but to end her employment because Defendants continuously failed to take her complaints of a sexually hostile work environment and complaints of unwelcome sexual conduct seriously and because management level employees of Defendants dismissed Plaintiffs' complaints, told T.M. there was nothing they could do, and/or blamed T.M. for what happened to her.

141.    As a result of Defendants failures to prevent or remediate a sexually hostile work environment and sexual harassment, T.M. was constructively discharged.

142.    T.M. was sexually harassed and retaliated against in violation of Title VII and PHRA.

143.    Defendants discriminated against T.M. based on her sex and created a hostile work environment in violation of Title VII and PHRA.

144.    Defendants negligently hired, supervised, and retained Mr. English even after they were aware of his inclination to sexually exploit young female employees, in violation of Federal and Pennsylvania Law.

145.    McDonald's Corporate Defendants and Defendant Coyle therefore served as joint employers of T.M., as discussed herein.

146.    T.M. reasonably believed she was working a job for the McDonald's Corporate Defendants.

147.    When T.M. began working at the Restaurant, she reasonably believed she was working for McDonald's Corporate Defendants because the Restaurant was branded in the same manner as all other McDonald's restaurants, she wore the same uniform as other McDonald's employees nationwide, and was unaware that Defendant Coyle owned the restaurant in question.

148.    Upon information and belief, McDonald's Corporate Defendants' involvement in the operations of the Restaurant, including the hiring process, inspections, setting policies, providing logos and providing branding, led T.M. to reasonably believe that the Restaurant where she worked was operated and was authorized to operate by McDonald's Corporate Defendants.

149.    McDonald's Corporate Defendants are liable for the acts and/or omissions of Defendant Coyle because Defendant Coyle was the apparent agent of McDonald's Corporate Defendants.

150.    Corporate McDonald's Defendants negligently maintained, or failed to maintain, policies and procedures to effectively prevent or remediate harassment and discrimination against T.M. despite a high degree of strict regulation and control over anti-harassment and anti-discrimination policies.

151.    Defendants' actions and/or omission were done willfully or with reckless disregard for T.M.'s statutorily protected rights.

### COUNT I – v. All Defendants
### SEX DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

152.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

153.    The foregoing conduct by Defendants constitutes unlawful discrimination against T.M. on the basis of her sex (female).

154.    Defendants' actions and/or omissions were willful and/or done with reckless disregard for T.M.'s federally protected rights.

155.    As a result of Defendants' unlawful sex discrimination, T.M. has suffered damages as set forth herein.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

### COUNT II – v. All Defendants
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

156.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

157.    The foregoing conduct created a sexually hostile work environment for T.M..

158.    T.M.'s employment was conditioned upon her being subjected to a hostile work environment.

159.    T.M. suffered intentional discrimination because of her sex.

160.    Defendants subjected T.M. to unwelcome conduct of a sexual nature that was severe and/or pervasive.

161.    The discrimination detrimentally affected T.M..

162.    The discrimination would detrimentally affect a reasonable woman in T.M.'s position.

163.    T.M. suffered tangible employment actions as alleged herein, including but not necessarily limited to constructive discharge.

164.    *Respondeat superior* liability exists such that Defendants are liable for the actions of Mr. English.

165.    Defendants were on notice that Mr. English had previously engaged in similar conduct with women under the age of eighteen who were also employed by Defendants.

166.    Instead of taking action to remediate or eliminate the harassment, Defendants retained Mr. English and placed him in a situation whereby he could freely commit the sexual harassment of T.M..

167.    When T.M. made complaints about the sexual harassment, Defendants management-level employees ignored T.M.'s complaints and blamed T.M. for the harassment.

168.    Defendants failed to maintain policies or procedures to effectively prevent harassment or discrimination based on sex and/or failed to ensure that any policies or procedures in place effectively prevented sexual harassment and/or a hostile work environment.

169.    Defendants failed to properly train its employees on policies to prevent and/or report

sexual harassment or hostile work environments.

170.    Defendants took no action to remediate or eliminate the harassment, which would have required T.M. to continue to subject herself to the hostile work environment, effectively making being subject to the hostile work environment a condition of her employment.

171.    Defendants constructively terminated T.M.'s employment as a result of creating a hostile work environment so intolerable and unbearable that T.M. was left with no choice but to resign.

172.    As a result of Defendants' conduct as aforementioned, T.M. has suffered damages as set forth herein.

173.    Defendants' actions and/or omissions were willful and/or done with reckless disregard to T.M.'s federal statutorily protected rights.

174.    Defendants are not entitled to an affirmative defense.

175.    Defendants knew or reasonably should have known about the sexual harassment and/or hostile work environment and of Mr. English's propensity to engage in sexual harassment and/or create a hostile work environment.

176.    Defendants failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

177.    Defendants failed to maintain a policy which worked to prevent and promptly correct the harassing behavior.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

### COUNT III – v. All Defendants
### RETALIATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

178.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

179.    T.M. engaged in activity protected by Title VII.

180.    T.M. suffered materially adverse actions at Defendant as it related to her employment.

181.    Circumstances exist which establish that the materially adverse actions were causally connected to T.M.'s engagement in protected activity.

182.    Defendants' actions and/or omissions were willful or done with reckless disregard to T.M.'s federal statutorily protected rights.

183.    As a result, T.M. has suffered damages as set forth herein.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

## COUNT IV – v. All Defendants
## SEX DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

184.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

185.    The foregoing conduct by Defendants constitutes unlawful discrimination against T.M. on the basis of her sex (female).

186.    As a result of Defendants' unlawful sex discrimination, T.M. has suffered damages as set forth herein.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

## COUNT V – v. All Defendants
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## PENNSYLVANIA HUMAN RELATIONS ACT

187.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

188.    The foregoing conduct created a sexually hostile work environment for T.M..

189.    T.M.'s employment was conditioned upon her being subjected to a hostile work environment.

190.    T.M. suffered intentional discrimination because of her sex.

191.    Defendants subjected T.M. to unwelcome conduct of a sexual nature that was severe and/or pervasive.

192.    The discrimination detrimentally affected T.M..

193.    The discrimination would detrimentally affect a reasonable woman in T.M.'s position.

194.    T.M. suffered tangible employment actions as alleged herein, including but not necessarily limited to constructive discharge.

195.    *Respondeat superior* liability exists such that Defendants are liable for the actions of Mr. English.

196.    Defendants were on notice that Mr. English had previously engaged in similar conduct with women under the age of eighteen who also worked at the Restaurant.

197.    Instead of taking action to remediate or eliminate the harassment, Defendants retained Mr. English and placed him in a situation whereby he could freely commit the sexual harassment of T.M..

198.    When T.M. made complaints about the sexual harassment, Defendants management-level employees ignored T.M.'s complaints and blamed T.M. for the harassment.

199.    Defendants failed to maintain policies or procedures to effectively prevent harassment

or discrimination based on sex and/or failed to ensure that any policies or procedures in place effectively prevented sexual harassment and/or a hostile work environment.

200.    Defendants failed to properly train its employees on policies to prevent sexual harassment or hostile work environments.

201.    Defendants took no action to remediate or eliminate the harassment, which would have required T.M. to continue to subject herself to the hostile work environment, effectively making being subject to the hostile work environment a condition of her employment.

202.    Defendants constructively terminated T.M.'s employment as a result of creating a hostile work environment so intolerable and unbearable that T.M. was left with no choice but to resign.

203.    As a result of Defendants' conduct as aforementioned, T.M. has suffered damages as set forth herein.

204.    Defendants are not entitled to an affirmative defense.

205.    Defendants knew or reasonably should have known about the sexual harassment and/or hostile work environment and of Mr. English's propensity to engage in sexual harassment and/or create a hostile work environment.

206.    Defendants failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

207.    Defendants failed to maintain a policy which worked to prevent and promptly correct the harassing behavior.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

## COUNT VI – v. All Defendants
## <u>RETALIATION IN VIOLATION OF</u>
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

208.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

209.    T.M. engaged in activity protected by the PHRA.

210.    T.M. suffered materially adverse actions at Defendant as it related to her employment.

211.    Circumstances exist which establish that the materially adverse actions were causally connected to T.M.'s engagement in protected activity.

212.    As a result, T.M. has suffered damages as set forth herein.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

## COUNT VII – v. All Defendants
## <u>NEGLIGENCE</u>

213.    Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

214.    The negligence, careless, recklessness and/or other liability-producing conduct on the part of Defendants consisted of, *inter alia*:

a.    Failing to adequately train T.M. on how to identify, address, and report incidents of sexual harassment, sexual assault and/or battery, and sexually hostile work environment;

b.    Failing to adequately perform screening and/or background checks on Mr. English prior to hiring where such screening and/or background checks would have revealed offenses which would have impacted Mr. English's ability to perform the duties he held;

c.    Failing to adequately supervise Mr. English, thereby ensuring he had unrestricted access to victims under the age of eighteen;

d. Continuing to employ Mr. English and retaining him in employment when Defendants had information of his prior sexual harassment of employees and/or of his prior criminal acts;

e. Failing to properly address T.M.'s complaints of harassment and unwelcome sexual conduct;

f. Failing to properly address other employees' complaints of harassment and unwelcome sexual conduct;

g. Failing to publish and distribute policies and procedures on sexual harassment and the reporting thereof which would actually be enforced as more than just lip service to anti-harassment;

h. Other acts and/or omissions yet to be discovered.

215. Defendants owed Plaintiffs a duty of care to ensure T.M. was safe in her work environment, was not subjected to unwelcome sexual conduct, and to remove sources of sexual harassment from the workplace.

216. Defendants, by their conduct, knew or should have known that Mr. English was dangerous, careless, and incompetent and such employment would create a situation where his conduct was harmful to T.M..

217. Defendants breached their duty to Plaintiffs to protect T.M. against a risk of harm.

218. The risks of harm were reasonably foreseeable.

219. As a direct and proximate cause of Defendants' negligence, Plaintiffs have suffered damages, as set forth herein, to include, *inter alia*:

a.   Non-economic damages for injuries such as emotional distress, harm to reputation, embarrassment, humiliation, inconvenience, indignity, outrage, mental anguish, and other consequential injuries;

b.   Non-economic damages for physical injury to T.M. caused by Mr. English's unwelcome sexual conduct; and

c.   Economic damages based on T.M.'s earning capacity, both past and future.

220.   Defendants' conduct was intentional, willful, wanton, outrageous, reckless and deliberately indifferent, directly and proximately causing Plaintiffs' injuries, entitling Plaintiffs to assert a claim for punitive damages.

221.   As a result, Plaintiffs have suffered damages as set forth herein.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

## COUNT VIII – v. All Defendants
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

222.   Plaintiffs incorporate by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

223.   Defendants, by their conduct as aforesaid, intentionally subjected Plaintiffs to ongoing and severe emotional distress.

224.   Defendants' conduct was intentional, willful, wanton, outrageous, reckless and deliberately indifferent, directly and proximately causing Plaintiffs' injuries, entitling Plaintiffs to assert a claim for punitive damages.

225.   As a result, Plaintiffs have suffered damages as set forth herein.

WHEREFORE, Plaintiffs seek the damages set forth in the Prayer for Relief Clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, T.M., a minor, by and through her mother and natural guardian, J.T. , requests that the Court grant them judgment against Defendants on all Counts in this Complaint and grant them the following relief:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Damages for Emotional pain and suffering, mental anguish, embarrassment, and humiliation;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences;

(h)    A permanent injunction enjoining Defendants, their directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and PHRA.

(i)    Order Defendants to institute and implement, and for their employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)    Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from T.M.'s record of employment, including, but not limited to, the pretextual reasons for T.M.'s end of employment; and

(k)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: December 21, 2023           **By** *:/s/ David M. Koller*
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: 215-545-8917
F: 215-575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*